You may begin whenever you're ready. Thank you, Your Honor. Good morning. Steve Van Sempfort for the appellant, Mr. Soto. I'd like to reserve two minutes for rebuttal if I may. You may. Thank you. I just want to focus on the claim accrual part of our argument first. And our position, of course, is that the limitations period on a claim cannot expire before the plaintiff ever has the right to file that claim in court. And I've done some, you know, additional research beyond what's in our brief. In the D.C. Circuit in 1994, this is an Ortiz v. Secretary of Defense. Counsel, before you start citing cases to us, if you have additional citations that are not in the briefs, you should list those with the deputy clerk afterwards and give a copy to counsel. We normally require that that be done ahead of argument. Yes, I certainly would be happy to do that, yes. And I was just going to say, this case that I am discussing right now is the D.C. Circuit 1994 case. In there, it talks about this same analysis in the context of another mandatory exhaustion regime, and it says the logic here is, quote, unassailable. So I think on the merits of that argument, the notion that the statute of limitations cannot expire before the plaintiff has the right. There's another way to skin that cat, though, and it seems to me more consistent with Ninth Circuit law, and I like your reaction to this. Ordinarily, an action accrues when you know of the injury to you. And here, he knew of the injury at the moment of the alleged assault. And so under Ninth Circuit law, if there's an exhaustion process that is pursued, at least, there's tolling during that time, so that although something accrues, you're not out of court if you're pursuing the exhaustion requirements. So why wouldn't that take care of the problem for the person who actually does pursue the claim? Well, ordinarily it would, and I think that's why this particular argument has been raised very often before by the courts. Does it fail, Mr. Soto? Pardon me? Does it not apply to Mr. Soto according to you? Oh, we certainly think it does. And that's the second part of our argument, to say, hey, if we have to go to the equitable tolling route, we certainly satisfy that. Well, I have some questions about that as well, because there's not as far as I could determine, there is nothing sworn to in the record on that point. And your client did receive the RAND notice, which our court requires, because we do ultimately hold pro se litigants to the same standards, but we give them a roadmap first to make sure they understand it. That was sent to him, and yet there's no affidavit, there's no sworn anything. Am I wrong about that? No, no, you're correct, and I admit that. I mean, I went through the record, and it's true, where he describes how he interacted with an officer, and the officer said, hey, you have to wait until the administrative or the investigation is over, you can't file your grievance. When he says that, it's in his brief, and his brief is not sworn. And so I do admit that. I will say the, you know, this circuit in the Thomas case, for instance, has said, you know, we know that pro se filings get special consideration, and especially pro se inmates have another level of discretion. And that's the whole point of the RAND notice. And, I mean, we've we deal with a lot of these cases, and people know how to do that when they get that notice. In fact, Mr. Soto knew how to do it, because in other cases, he filed affidavits. And indeed, he filed an affidavit in this case. He just omitted to say anything about being misled by prison officers about having to wait for the CIU to complete his investigation before he could continue trying to exhaust. That is true. That is true. That is the state of the record. And I think it's a Let me ask you another question. Is there anything in the record that the plaintiff was told of his RAND notice? I mean, I tried to find it. There's a copy of it. I was going to say, I believe it is in there. So you're not disputing that? I'm not disputing. I believe the record does demonstrate that he got his RAND notice. I just wanted to make sure, because it seemed to me that some of the, if you will, pages of the district court's procedure was left out of the record that came up to us. And so I just wondered for sure. I wanted to make sure you were on the record to saying he did get his RAND notice. I believe he did. I believe he did. So if he gets his RAND notice, then can we apply, Thomas? I would certainly request that you do. I know you would request, but now you've got it dead on. Can we apply, Thomas? I think you can. I think that Do you think Thomas goes so far as to say that pro se MNAs are expressly exempted from these rules, even getting the notice? I think in the right case, and I think here This is the right case? I certainly think so, Your Honor. Why is it righter than any other? Well, here I mean, the first thing I would have said is, I'm not sure they got the notice. But you're agreeing they did get the notice. And so the next thing I say is, okay, what else do I use? Because there's no question that we've looked at Thomas v. Ponder pretty carefully, and we know what was said by Judge Reinhart there, and we know how it helps your particular client. Now we've also looked, however, at Jones, and we've looked at Bias, and we know what normal pro se litigants are subject to. We're just talking about whether pro se inmates are quite there yet, with notice. And I agree. I think what this case, you know, what Mr. Soto failed to do, I mean, the evidence that he's trying to get in here is his own statements. And they're in the complaint. Well, not in the complaint. They're in the answer, if you will, to a motion. That's right. They're in a brief. And so this is unlike where you're trying to get evidence from a third party in, where, you know, there may be some real question about whether you can get that third party to sign an affidavit. But there's a real question when something's not under oath, with what seriousness someone takes the obligation to be truthful. I mean, that's what we've – apply that to everyone, not just inmates. Everybody has to swear to whatever it is they want the court to consider. And it's easy to make an argument offhand, but when you have to go through the process of declaring it under penalty of perjury, it may be a different thing. So why should we accept this as being – as setting up a factual issue? Well, I understand that as a general proposition. I think that certainly the affidavit requirement – yes, I certainly would wish that he had put this in an affidavit, that he had brought his brief to a notary and then signed it in front of the notary. I submit that, you know, in this context where a prisoner is submitting his own He knows that's a serious thing. He didn't, you know, comply with the technical requirements of Rule 56, but we know that this Rule 56 is – we know that the information that he's setting forth in his brief would be something that he would testify to. I have trouble squaring that with different aspects of the record that I wanted to give you a chance to address. One is the fact that the letters that you attach, his complaint letters that followed that occurred during this period, unrelated to other problems or related to other problems, when he talks about this incident, he talks about he wanted to talk to CIU and he was told it would take some time and he was told it was not in his best interest to pursue his complaint. He doesn't ever say in any of these letters, I was told I could not pursue exhaustion until CIU had completed his investigation. That's one concern. Second concern, so that even if we were to relax the affidavit requirement, it's not elsewhere in the record at all. And the second concern is that when he did exhaust, he didn't wait for the CIU investigation to be completed. He went forward, he re-initiated, if you will, a process that had been abandoned. Yeah. With respect to the second part of your question, I think he did wait until it was exhausted. So he re-initiated the process. In order to get the investigation done. That's right. But he didn't wait for the CIU investigation to end before he did that, which is what he says he was told he had to do. So that's the – I have two strong pieces of evidence in the record that say he was not told, in fact. He had to wait for this investigation before he could do anything that the rules clearly told him he had to do. I certainly understand the concerns, Your Honor. And I guess that's one reason why we need to return to the first part of the argument, the claim of cruel part. Because, again, equitable tolling doesn't necessarily sweep up all of the problems that you have with the statute of limitations issues. And that's why if this – if Mr. Soto falls through the cracks on the equitable tolling piece, then he's where the district court said he was. Sorry, Your Honor. May I finish? Yes, please do. Then you're – then you're where the district court says, hey, you know, your remedies and you never had the right to file the claim, which is, again – and I'll forward those cases, Your Honor. I know you've gone over, but I think if you really want to return to that, what we really have here then is you're suggesting that there's a mandatory tolling when one starts the exhaustion process. And as long as it takes to do the exhaustion for whatever reason, it's tolled, and therefore, I'm in because we toll that and I meet the – I meet the date. What if the person who is in the middle of the exhaustion just does not proceed diligently? What if the person who is in the middle of that exhaustion lets his claim just sit there? Does it nonetheless toll in that instance? And what would give me the reason to suggest that ought to be the rule? Your Honor, may I respond to the question? Please. Oh, yes, definitely answer the question. Thank you. First of all, I would say it's not tolled. I would say that the claim is not accrued until after the mandatory administrative remedies are completed. So the claim does not – No matter how long it takes and no matter how diligent the one is in exhausting. Or not. Or not. I think that's right. And I think the – So that he can just do whatever he wants as long as he starts the five-step process. Well, certainly not because I think the individual institution will have its own requirements, his own process. And so a prisoner – Individual institution had a process. He completed the first two steps of the process, started on the third, and on the third were hammered down as to whether he was diligent or whether he wasn't. Okay. And if the institution in this instance had said, look, you haven't been timely in the middle. You've dropped the ball halfway through the process. You haven't successfully exhausted your administrative remedies. You're out. And you end the administrative process there. If he goes and tries to file a claim in federal court, that claim is dismissed for failure to exhaust your administrative remedies. Here, he started the process. Arguably, the ball was dropped. But the institution went ahead and they picked it back up and they let him exhaust his administrative remedies on the merits. So they waived their right to say he shouldn't be allowed to proceed in federal court? Is that your argument? A kind of a forfeiture or waiver? Well, so there's the Reyes case, which says if there's an untimely administrative exhaustion and yet the institution nevertheless goes ahead and processes it, then yes, the institution has waived it. Thank you, counsel. We'll give you a minute for rebuttal because we're used to a lot of it with questions. Ms. Lombino? May it please the court, Arizona Assistant Attorney General Michelle Lombino for the defendants. Your honors, I would like to correct something right off the bat that the plaintiff's counsel said. He said that the unverified statement or brief that Mr. Soto put in, that in that brief it said that an SSU person told him that he couldn't start the grievance process. That's a misstatement of the record. What Mr. Soto actually said was that CIU will be notified and that he will be seen by CIU and once CIU investigation was done, he could start his grievance process. So in no time, not even in this brief, let alone all of those inmate letters, does he ever say that someone told him he couldn't do something? Well, but just a minute. If I read that very carefully and you agree with me, don't you, that he had completed two steps of the grievance process? So he had actually, yes, your honor, he had started, so he had actually started the grievance, he had actually started it. He had put two steps. So if I read that letter in juxtaposition with him already having started, it doesn't seem to me totally out of the ordinary to suggest that he was told he couldn't go on with the grievance process until the CIU had completed his investigation. He's not even claiming that, your honor. But it seems to me that's exactly what he's claiming. He's saying, I started this process. I got involved with the CIU when I went to the special services unit and I was told that I couldn't go on with my process. He puts it, the CIU puts it as start the grievance process, he says, without completing. So in other words, he can't do any more without completing. That's what it seems to me obvious to suggest. Your honor, even if you wanted to accept that, that he's suggesting that, this isn't, what he's put in is insufficient on this motion for summary judgment. Mr. Soto bears the burden of proof on this issue. He's arguing that the statute of limitations should, hasn't expired. He wants it to be revived. It's, it's his burden. He already had gone through an order to show cause in the district court. He'd already raised this. It seems a little uneasy to me that we get to this point where he's taking the special services unit that, at that point, nothing happens. Nothing happens. He submits inmate letters inquiring into the investigation. He doesn't get a response. He finally. Excuse me. There's nothing in the record to that effect, your honor. That he's the, the, um, I know his counsel. Okay, let's strike it. I thought I did find it in the record, but I don't want to argue about that. Your honor. He finally, in 2014, complains to another correctional officer and now the CIU gets together and does something. Actually, your honor, in 2014, he started his grievance process before CIU began an investigation. Moreover, CIU investigated only his sexual assault claim. That was but one single claim. There are multiple defendants in this claim. Excuse me. In this case. What caused the CIU to start its investigation? There's, there's, this isn't in the record. What started? I mean, I could not find other than his complaint to another correctional officer that caused them to do anything. In 2014. In 2014. This isn't in the record, your honor, but there is a Prison Rape Elimination Act and prisons do have to investigate a sexual assault claim anytime it's raised, even if it's 20 years later. And, and, and to go back into what is in the record. All I'm trying to do, all I'm trying to do is give you the idea. Now I've got this and it's a motion for summary judgment, taking all the facts in the favor of Soto. And I'm seeing these things. I read the complaint. I read what the complaint says. I know exactly what he's done to that point. And then I find that he complains to the correctional officer and finally we get a CIU investigation started and it completes immediately. Whereas if in fact something had been done right at first, when he was taken to special services unit, we wouldn't have the problem we have right now. And they find his claims unfounded and then he does the rest of the grievance process and he, and now we're here and now the government says, no, this shouldn't have told. That's correct, your honor. How can, when he starts the process, the only thing it seems to me that I could say that it isn't told is if in fact he did something wrong or he did something that was not diligent in making the process work. I don't have anything like that in the law, but that seems to me the government's argument. Because as soon as he knows what the CIU did, he completes the rest of the grievance process. He does everything he's supposed to do. And I'm trying to figure out if it's told, why it doesn't toll from the time he informs the formal complaint within a month. Why it doesn't toll from that point to the point where the CIA completes that investigation and the plaintiff's claims are unfounded. I'm sorry, I'm trying to, are you saying, your honor, that you are wondering why it didn't toll for three years and nine months? And just to correct again, your honor, Mr. Soto did not wait for the CIU investigation to begin the grievance. He had abandoned it for three years and nine months and then he started it up again. I guess the question that Judge Smith is trying to get at, how do we know the difference between abandonment and the next step taking a long time? In other words, if he presents it and waits for an answer and the answer takes two years or five years or whatever, why is that lack of diligence on his part? I think that's, is that the crux of the question? Yes, that's exactly. I'm trying to lay it out so that I, so that she gets all the stuff that I have that now Mr. Soto puts in front of me. Why has it not tolled all during that point? Your honor, what Mr. Soto has put in front of you is insufficient to establish a triable question. Okay, let's go at it a different way. Under the law, as I understand it, we are to toll something according to the state law and Arizona suggests that we are to give a tolling all during, all during the time that there, that the plaintiff, from the time he initiates the formal, the informal complaint resolution until the end of that informal complaint resolution. It's, it's no question that's what Arizona law is. So why is this a case? Why don't I just say toss it out? This was not tolled for the appropriate point in time, therefore Arizona law controls, it's not contrary to federal law. Let's go forward with this complaint. Your honor, because in this case it was not tolled for three years and nine months. Because Mr. Soto was aware of the grievance policy. Arizona has a grievance policy. It's, and it's spelled out that. Part of the grievance policy. Yes, your honor. And the grievance policy says if you don't get a response within a certain period of time, you are to proceed to the next level. So you're arguing abandonment? Pardon me? You're arguing abandonment? Yes, your honor. That he just quit? He abandoned it. There's nothing in the policy that says you have to wait for a CIU investigation. To the contrary, the policy says that the corrections officer may ask for an investigation and may extend the time period for an investigation, but notice of that would be given to the inmate. There's no evidence that that, that this happened in this case. So yes, he started the grievance process. And even assuming that an SSU person told him that, well, you could start the grievance process after CIU sees you. Even assuming that, that's not enough to, he hasn't, excuse me, he hasn't presented enough evidence to show that he was taking steps to pursue the grievance and that he was actively engaged in the grievance process and that the statute of limitations should be told for that entire three years and nine months. What about his complaints that CIU never came and he was waiting? Your honor, I think you put it best that he said that he, in his inmate letters, he said that he was, he wanted to see CIU. That was his request. And he, you know, he, he wanted to see them, but never, never does he affirmatively state that somebody told him that you cannot proceed with your grievance process until CIU comes. Do I have anything in the record that says the grievance process ended until after the CIU completed its investigation? I'm sorry, your honor, I don't understand the question. Well, he started his, his grievance process when he started with the informal complaint. No question. That was within a month. He initiated the informal complaint through the discussion with the staff. He submitted the informal complaint on the inmate letter. The next thing that I have from the prison at all is that the CIU completed its investigation in April. I don't have anything suggesting, well, you didn't do anything. You didn't do what you were supposed to do. This is over. I don't have anything in the record, which would suggest or give him notice. This is over. Then general rules that you now want to quote to me that he should have been aware of. The first thing that I have from the prison to suggest that there's anything they're doing about this informal complaint on the inmate letter is the CIA completing its investigation and finding that his claims were unfounded. Your Honor, if I might, going back to 2010, that informal inmate letter, if the, according to the department policy, if there was no timely response, which there is no evidence that there was one, the inmate had to proceed to the next step and file a formal grievance. So then fast forward to that CIU investigation, there actually were a number of steps that preceded that CIU investigation at the prison. There was another inmate letter and the inmate actually, excuse me, Mr. Soto actually started his grievance processes. There were responses. Are they in the record? Yes, they are, Your Honor. Okay. I'll read it again. In fact, Your Honor, one of the responses was that there had been an independent unit investigation and that all of Mr. Soto's claims of excessive force, that that unit investigation showed that those were not credible. And then they were relying on that CIU investigation solely as to that one claim, the sexual assault claim. Okay. I understand now your answer. Thank you, counsel. You've exceeded your time. So we'll hear from Mr. Flintstone-Ford again. Thank you. You have a minute for rebuttal. Thank you, Your Honor. Just a few quick points. First of all, on the burden of proof, as the panel knows, with respect to the administration or the exhaustion of administrative remedies, it is obviously the appellee's burden of proof to prove that. And if they cannot show when this grievance process ended, then I think that they would not have satisfied that burden. And I think that the other thing I want to mention is that all of this discussion with the equitable tolling, again, it's beside the point if the first of our two arguments is accepted about the fact that the claim can't accrue before you have the right to file it. And again, I think that is a pretty basic and correct statement of the law. I think the other thing is about if we do, if the panel does reverse on the equitable tolling argument, that leaves Mr. Soto in a position where he could be — I'm sorry, Your Honor, can I finish the thought? Yeah. I'm sorry. Okay. No, thanks. Yeah. That leaves Mr. Soto in a position where he could defeat a summary judgment motion, but if it went to trial, the trier of fact could still potentially find against him on the basis of the fact that he hasn't exhausted his remedies, even when we believe that as a matter of law, his claim did not accrue. And so I just wanted to leave that with the panel as well. So we think that a judgment, if the panel is going to reach the merits, they should reach the merits of the first claim or of the first argument so that we're not in a before the trier of fact on an impermissible ground. Thank you, counsel. The case just argued is submitted. Again, we thank both counsel for helpful arguments and very much appreciate your taking on this as a pro bono matter. It's — we really appreciate it a lot.
judges: Graber, N.R. Smith, Rosenthal